1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                             CENTRAL DISTRICT OF CALIFORNIA

10   ALBERTO CONCHA,                    )   Case No. CV 09-3044-PJW
                                        )
11            Plaintiff,                )
                                        )   MEMORANDUM OPINION AND ORDER
12       v.                             )
                                        )
13   MICHAEL J. ASTRUE,                 )
     Commissioner of the               )
14   Social Security Administration,   )
                                        )
15            Defendant.                )
     ───────────────────────────────   )
16

17                                 I. INTRODUCTION

18       Before the Court is Plaintiff's appeal of a decision by Defendant

19   Social Security Administration ("the Agency"), denying his application

20   for Disability Insurance benefits ("DIB").  Plaintiff claims that the

21   Administrative Law Judge ("ALJ") erred when he: 1) found that

22   Plaintiff's mental impairment did not meet or equal a Listed

23   Impairment; and 2) found that, though Plaintiff could not do his past

24   relevant work, he could perform other work that existed in the

25   national and local economy.  (Joint Stip. at 3-5, 12-22.)  Because the

26   Agency's decision that Plaintiff was not disabled is not supported by

27   substantial evidence, the decision is reversed and the case is

28   remanded for further proceedings.

## II. SUMMARY OF PROCEEDINGS

Plaintiff applied for DIB on June 12, 1998, alleging that he had been unable to work since September 30, 1995, when he fell off a tractor and hit his head on a pipe, causing him to suffer a brain injury which markedly affected his ability to think. (Administrative Record ("AR") 674.) After his application was denied initially and on reconsideration, Plaintiff requested and was granted a hearing before an ALJ. (AR 87-98.) Plaintiff appeared with counsel and testified through an interpreter at the hearing on January 31, 2000. (AR 524-62.) On July 21, 2000, the ALJ issued a decision finding that Plaintiff was disabled and entitled to benefits from July 7, 1996 to March 1, 1998, but not thereafter. (AR 59-65.) Plaintiff appealed to the Appeals Council, which issued an order on November 18, 2003, vacating the decision and remanding for further proceedings. (AR 400-02.)

On December 16, 2004, the same ALJ held a second hearing, at which Plaintiff again appeared with counsel and testified through an interpreter. (AR 563-602.) On August 8, 2005, the ALJ issued a new decision, finding that Plaintiff was not disabled at any time from October 1, 1996 through December 31, 1997, the date he was last insured for disability benefits. (AR 606-17.) Plaintiff filed a request for review, which the Appeals Council denied. (AR 6-11.) He then filed an action in this court.

On June 4, 2007, the district court reversed and remanded the case, finding that the ALJ had failed to obtain medical testimony as instructed by the Appeals Council. (AR 673-82.) On May 13, 2008, the Appeals Council issued an order, remanding the case to a new ALJ. (AR 669-70.)

On November 13, 2008, a third hearing was held, at which Plaintiff again appeared with counsel and again testified through an interpreter. (AR 708-51.) On February 23, 2009, the ALJ issued a decision denying benefits. (AR 606-17.) Plaintiff thereafter commenced the instant action.

### III. DISCUSSION

1.   The ALJ Did Not Err In Finding That Plaintiff Did Not Equal Listing 12.05(C)

In his first claim of error, Plaintiff contends that the ALJ erred at step three of the sequential disability analysis when he found that Plaintiff's mental impairment did not equal Listing 12.05(C), mental retardation.[1] (Joint Stip. at 3-5.) For the following reasons, the Court concludes that the ALJ did not err.

A claimant whose impairment or combination of impairments equals one of the Listed impairments is disabled. *See Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001) (citing 20 C.F.R. § 404.1520(d)). To "equal" a Listing, the claimant must establish symptoms, signs, and laboratory findings "'at least equal in severity and duration' to the characteristics of a relevant listed impairment, or, if a claimant's impairment is *not* listed, then to the listed impairment 'most like' the claimant's impairment." *Tackett v. Apfel*, 180 F.3d 1094, 1099-1100 (9th Cir. 1999) (quoting 20 C.F.R. § 404.1526) (emphasis in original); *see also Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) ("For a claimant to qualify for benefits by showing that his . . . impairment . . . is 'equivalent' to a listed impairment, he must

---

[1]   Plaintiff concedes that he does not *meet* the requirements of Listing 12.05(C). (Joint Stip. at 3-4.)

3

present medical findings equal in severity to *all* the criteria for the one most similar impairment.") (emphasis in original).

Here, Plaintiff contends that he equals Listing 12.05(C), mental retardation, which provides:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.  [¶]  The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied. . . .
>
> [¶] . . .
>
> C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

Plaintiff argues that his condition equals the Listing because examining psychologist Dr. Izzi determined that his I.Q. was 65; the ALJ found that he has other severe limitations, namely left-side muscle wasting; and psychiatrist Dr. Kivowitz testified at the 2008 hearing that loss of cognitive functioning could be expected from the injury that Plaintiff suffered.  (Joint Stip. at 4-5.)  The Court disagrees.

Listing 12.05(C) requires that the onset of mental retardation be established before the claimant turns 22.  Obviously, Plaintiff did not suffer from mental retardation before he was 22.  In fact he was able to earn a college degree.  According to Plaintiff, his impairment

4

was caused by a fall he sustained when he was 40 years old.  Thus, he is categorically excluded from Listing 12.05(C) and cannot circumvent the early onset requirement by arguing that he equals the Listing. *See, e.g.*, *Novy v. Astrue*, 497 F.3d 708, 709 (7th Cir. 2007) ("The requirement of early onset and the reference to the claimant's 'developmental period'" in the introductory paragraph of Section 12.05 "seem intended to limit coverage to an innate condition, rather than a condition resulting from a disease or accident in adulthood."); *see also Foster v. Halter*, 279 F.3d 348, 354-55 (6th Cir. 2001) (affirming ALJ's conclusion that claimant did not meet or equal Listing 12.05 where the evidence did not demonstrate or support onset of the impairment before age 22); *Williams v. Sullivan*, 970 F.2d 1178, 1185-86 (3d Cir. 1992) (holding that claimant failed to show that his impairment was equal to Listing 12.05(C) where evidence did not substantiate that his mental retardation existed before age 22) (citing *Zebley*, 493 U.S. at 531); *see also Christner v. Astrue*, 498 F.3d 790, 793 (8th Cir. 2007) (remanding where "some circumstantial evidence," including "low-grade dropout" and special education classes, supported argument that claimant's mental retardation "manifested before age twenty-two, as section 12.05 also requires."); *Hodges v. Barnhart*, 276 F.3d 1265, 1268-69 (11th Cir. 2001) (remanding for further proceedings after recognizing rebuttable presumption that IQ's remain fairly constant throughout a claimant's life, "absent evidence of sudden trauma that can cause retardation[.]"); *Gomez v. Astrue*,__ F. Supp.2d __, 2010 WL 546337, at *10, 11 (C.D. Cal. 2010) (remanding for further consideration of whether claimant met or equaled Listing 12.05(C) where records satisfied "requirement that plaintiff have manifested deficits in adaptive functioning 'during the

1    developmental period'", i.e. before age 22).  The early onset
2    requirement would be rendered meaningless if a claimant who suffered a
3    mental impairment following his 22nd birthday could skirt the early
4    onset requirement by asserting that he equaled the Listing.  For these
5    reasons, the claim is denied.

6         2.    <u>The ALJ's Finding That Plaintiff Could Perform Other Work Is</u>
7               <u>Not Supported by Substantial Evidence</u>

8         In his second claim of error, Plaintiff contends that the ALJ
9    erred in concluding that he could perform several jobs identified by
10   the vocational expert.  Plaintiff argues that his limitations preclude
11   him from performing these jobs as they are described in the Dictionary
12   of Occupational Titles ("DOT").  (Joint Stip. at 12-22.)  For the
13   following reasons, the Court agrees.

14        The ALJ concluded that Plaintiff was illiterate and could not
15   communicate in English.  (AR 616.)  The ALJ neglected, however, to
16   include these limitations in the hypothetical question to the
17   vocational expert.  (AR 737-40.)  Based on the hypothetical, the
18   vocational expert concluded that Plaintiff could no longer perform his
19   old job but could perform the jobs of photocopying machine operator,
20   marker, and toll collector.  (AR 740-41.)

21        Plaintiff contends that the ALJ erred because these jobs require
22   an ability to read and to communicate in English.  The Agency concedes
23   that the ALJ erred in finding that Plaintiff could work as a toll
24   collector, but argues that he did not err as to the other two jobs.
25   (Joint Stip. at 22-26.)  The Agency argues that the Court should
26   consider the context in which the ALJ determined that Plaintiff was
27   illiterate and could not communicate in English, focusing on
28

                                    6

1    Plaintiff's testimony that "only sometimes he did not understand it."
2    (AR 23.)

3        The Agency's attempt to recast the ALJ's finding that Plaintiff
4    was illiterate and could not communicate in English is rejected.   The
5    ALJ's ruling on this issue was not ambiguous.   And the Agency is not
6    empowered to reinterpret his ruling at this stage.   The Court presumes
7    that the ALJ said what he meant to say when he found that Plaintiff
8    was illiterate and could not communicate in English.

9        That being said, this issue, obviously, mandates remand.
10   According to the DOT, both jobs require the ability to recognize 2,500
11   words, read at the rate of 95-120 words per minute, print simple
12   sentences, and speak simple sentences, using "normal word order, and
13   present and past tenses."   *See* DOT 207.685.014, 1991 WL 671745
14   (Photocopying Machine Operator), DOT 209.587-034, 1991 WL 671802
15   (Marker).   By definition then, an illiterate person who cannot
16   communicate in English is not capable of performing these jobs.   The
17   ALJ's conclusion that Plaintiff could was in error.   On remand, these
18   limitations should be included in the hypothetical to the vocational
19   expert.   *See, e.g., Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886
20   (9th Cir. 2006) (holding that hypothetical question that does not
21   include all of a claimant's restrictions is legally inadequate); *see*
22   *also Embrey v. Bowen*, 849 F.2d 418, 423-24 (9th Cir. 1988) (holding
23   that, if vocational expert testimony does not take into consideration
24   all of claimant's limitations, the testimony has no evidentiary value
25   and cannot support ALJ's decision).

26       Plaintiff also claims that the ALJ's finding that he was limited
27   to simple, routine, repetitive tasks precludes him from performing
28

work requiring an SVP level of two. (Joint Stip. at 17.)  The Court disagrees.

An SVP of two denotes essentially unskilled work, i.e. work "which needs little or no judgment to do simple duties that can be learned on the job in a short period of time," usually within 30 days, and requiring "little specific vocational preparation and judgment," 20 C.F.R. § 404.1568(a); *see Terry v. Sullivan*, 903 F.2d 1273, 1276-77 (9th Cir. 1990) (holding that SVP of two "corresponds precisely to the definition of unskilled work" in regulations).  Nevertheless, "the SVP level in a DOT listing indicating unskilled work does not address whether a job entails only simple, repetitive tasks[,]" because a job's SVP is "focused on 'the amount of lapsed time' it takes for a typical worker to learn the job's duties[,]" not the reasoning level required to perform that job. *Meissl v. Barnhart*, 403 F. Supp. 2d 981, 983 (C.D. Cal. 2005) (holding that a job's reasoning level score is "directly on point with" limitation to simple repetitive work). Here, both jobs require a reasoning level of two, (*see* DOT 207.685.014, 1991 WL 671745 (Photocopying Machine Operator); DOT 209.587-034, 1991 WL 671802 (Marker)), which is not inconsistent with a limitation to simple, repetitive tasks. *See*, *e.g.*, *Hackett v. Burnett*, 395 F.3d 1168, 1176 (10th Cir. 2005) (noting that level-two reasoning appears more consistent with "simple and routine work tasks"); *Meissl*, 403 F. Supp. 2d at 983-984 (holding that vocational expert's testimony that claimant restricted to simple and repetitive tasks could perform job requiring level-two reasoning was not inconsistent with DOT).  Because an individual limited to simple and repetitive or routine tasks is not necessarily precluded from work requiring an SVP of two, the ALJ was entitled to rely on the

8

vocational expert's testimony that he could do such work.  For these reasons, Plaintiff's argument here is rejected.

Plaintiff also claims that the ALJ erred when he concluded that Plaintiff could perform these jobs despite his limited use of his left arm and left hand.  In Plaintiff's view, these jobs require frequent and unrestricted use of both arms and both hands.

Though there is not a lot of law on this subject, what little there is suggests that the ALJ's decision is right, i.e., the requirement of frequent use of hands and arms does not necessarily mean both hands and both arms.  *See*, *e.g.*, *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000) (holding that vocational expert testimony that claimant, whose left arm had been amputated, could perform work as cashier or ticket seller was not inconsistent with DOT requirement of occasional or frequent handling and fingering where DOT did not require bilateral ability).  Further development of this issue would be helpful to the Court, should the case be back before the Court in the future.  It is requested, therefore, that the vocational expert address this specific issue and explain whether, under the DOT, a person with limited use of one arm and one hand can perform a job that requires frequent use of the hands and arms.

3.   Remand Is Appropriate

Plaintiff requests that the Court order that the case be remanded for the payment of benefits in this now 12-year-old case.  The determination whether to remand for further proceedings or for payment of benefits lies within the discretion of the Court.  *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989).  In most circumstances in Social Security disability cases, remand is the proper course.  *See Moisa v. Barnhart*, 367 F.3d 882, 886-87 (9th Cir. 2004).  This is

9

particularly true where remand may be productive, as where additional proceedings can remedy defects in the administrative proceedings. *See*, *e.g.*, *Celaya v. Halter*, 332 F.3d 1177, 1184 (9th Cir. 2003).

In this case, it is not clear whether Plaintiff is capable of working or not. This uncertainty is due in part to the fact that some of the doctors who examined and tested Plaintiff believed that he was not trying, i.e., that he was pretending to be more impaired than he actually was. Though the Court is sympathetic to Plaintiff's situation and recognizes that he has waited a long time to have these issues finally decided, it is not prepared to order an award of benefits based on the record now before the Court. Thus, the case will be remanded for further proceedings. *See Harman v. Apfel*, 211 F.3d 1172, 1180-81 (9th Cir. 2000); *see also Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003).

IV. CONCLUSION

For the foregoing reasons, the Agency's decision is reversed and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

IT IS SO ORDERED.

DATED: June 21, 2010.

_____
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Soc Sec\Concha\Memo_Opinion.wpd